UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.

JAMES P. FOX,

           Defendant.

_____

22-CR-53
22-MR-55


## <u>DECISION AND ORDER REGARDING DETENTION PENDING TRIAL</u>

"[I]t is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law."  *United States v. Clark,* 96 U.S. 37, 49 (1877) (Harlan, J., dissenting) (quoting *East Indian Co. v. Paul,* 7 Moo. P.C.C. 111). This is precisely the type of hard case that can tempt a court to be guided by emotion rather than the relevant legal principles.

The defendant is charged with trading drugs for sex that included violence.  The images and communications presented by the government have substantial shock value, and the allegations are deeply disturbing.  The Court is duty-bound, however, to cast aside visceral reactions and personal opinions and to focus instead on the only questions that matter in the context of the government's motion for detention: (1) Does clear and convincing evidence demonstrate that no condition or combination of conditions will reasonably assure the safety of any other person and the community and (2) does a preponderance of the evidence establish that no condition or combination of conditions will reasonably assure the defendant's appearance?  For the reasons that follow, the answer to both questions is no.  Therefore, in accordance with 18 U.S.C.

§ 3142(e), (g) and § 3145(a), the order of detention issued by United States Magistrate Judge Michael J. Roemer is vacated, and the defendant is hereby ordered to be released pending trial on the conditions described below.

## PROCEDURAL HISTORY

On February 3, 2022, Judge Roemer authorized a two-count criminal complaint, which charged the defendant, James P. Fox, with using and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1), and with possessing a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Case No. 22-cr-53, Docket Item 1. On February 4, 2022, Fox made his initial appearance before Judge Roemer, and the government moved for a pretrial order of detention. Case No. 22-cr-53, Docket Item 3. That same day, the United States Probation Office recommended Fox's release on certain conditions. Docket Item 15 (filed under seal).[1] The matter was adjourned so that Fox could obtain an attorney. Case No. 22-cr-53, Docket Item 3.

On February 8, 2022, the parties appeared before Judge Roemer for a detention hearing, which continued on February 11, 2022. Case No. 22-cr-53, Docket Items 5 and 6. Following a proffer by the parties, Judge Roemer ordered Fox's detention. *See* Case No. 22-cr-53, Docket Items 6 and 7. Judge Roemer explained that although Fox had "presented some evidence to rebut the presumption" that he was a danger and a flight risk, the government had established "by a preponderance of the evidence that no

---

[1] Unless otherwise noted, record citations are to documents filed in W.D.N.Y. Docket No. 22-mr-55.

condition or combination of conditions w[ould] reasonably assure [Fox]'s appearance as required" and "by clear and convincing evidence that no condition or combination of conditions w[ould] reasonably assure the safety of any other person in the community." Docket Item 4-1 at 116.[2]

On February 12, 2022, Fox appealed Judge Roemer's detention order, Docket Item 1, and on March 30, 2022, he filed a brief in support of his appeal, an attorney declaration, and several exhibits, Docket Items 3 and 4. More specifically, Fox argued that he should be released on the following conditions:

> 1. Defendant must post with the Court a secured bond in a form approved by the Court, of $300,000 secured by the agreement of Defendant and each surety to forfeit the property owned by Defendant (981 Beach Road, Cheektowaga, New York), and the property owned by Defendant's parents (4689 Hedgewood Drive, Clarence, New York), based upon the Court's understanding that Defendant and the sureties hold a total equity value in the properties of at least $300,000. The agreement and bond shall be posted to secure Defendant's appearance at all proceedings as required, and to secure Defendant's compliance with all the conditions set forth herein. The failure to appear as required or otherwise comply with the conditions set forth herein shall result in forfeiture of the properties utilized to secure the $300,000 bond.
>
> 2. Defendant shall be placed in the custody of his father, Donald Fox, who must execute an agreement promising to (a) supervise Defendant in accordance with all conditions of release; (b) use every effort to assure the appearance of Defendant at all scheduled court proceedings; and (C) notify the Court immediately in the event Defendant violates any conditions of release or is no longer in his custody.
>
> 3. Defendant must participant in the "Home Detention" location-restriction program and abide by all the requirements of the program which will include electronic monitoring or

---

[2] Page numbers for docket citations refer to ECF pagination.

other location-verification system, as recommended by the Probation Office and approved by the Probation Office and the Court. Defendant shall pay all or part of the costs of the program based upon his ability to pay as determined by the Probation Office. "Home Detention" means that Defendant is restricted to his residence at all times except for employment; education; religious services; medical, substance-abuse, or mental-health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the Probation Office.

4. The Probation Office will install monitoring software on any phones, computers, or connected devices that the Defendant uses. The Defendant will notify the Probation Office of all phones, computers, and connected devices that he uses to access the Internet. Defendant shall not access the Internet from any other devices.

5. Defendant shall not utilize the Internet or any other means to search for, review, or access sites related to escorts, and the Defendant shall not contact, attempt to contact, associate with, or be in the presence of any person holding herself out as an escort.

6. Defendant shall report to Pretrial Services within 24 hours of release and as directed by the U.S. Probation Officer.

7. Defendant shall surrender any passport/passport card to the Clerk of the Court and surrender other international travel documents to the appropriate authorities.

8. Defendant shall not obtain a new passport or other international travel documents.

9. Defendant's travel is restricted to the Western District of New York, unless Court permission is granted to travel elsewhere.

10. Defendant shall remain at a verifiable address as approved by the Probation Office.

11. Defendant shall possess no firearm or destructive device.

12. Defendant shall submit to a mental-health evaluation and/or treatment as approved by the Probation Office,

4

including co-pay, including an assessment for sex addiction and treatment as determined appropriate.

13. Defendant shall refrain from any use of alcohol.

14. Defendant shall refrain from the use or unlawful possession of a narcotic drug unless prescribed.

15. Defendant shall submit to drug/alcohol testing and/or treatment as directed by the Probation Office, including co-pay.

16. Defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited-substance testing which is required as a condition of release.

17. Defendant shall report within 72 hours to the Probation Office any contact with any law-enforcement personnel, including, but not limited to any arrest, questioning, or traffic stop.

Docket Item 3 at 9-10 (emphasis omitted).  Fox noted that the government could "also maintain the pole camera it ha[d] already installed outside his residence."  *Id.* at 38.

On April 15, 2022, the government responded, Docket Item 8, and on April 22, Fox replied, Docket Item 13.  The Probation Office subsequently issued a memorandum stating that it continued to recommend release on certain conditions.  Docket Item 21 (filed under seal).

In the meantime, on April 12, 2022, a Federal Grand Jury returned a seven-count Indictment charging Fox with distributing heroin and cocaine base in violation of 21 U.S.C.§§ 841(a)(1) and 841(b)(1)(C) (Counts 1 and 2); using and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) (Count 3); possessing a firearm in furtherance of drug-trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4); distributing heroin causing serious bodily injury in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(C) (Count 5); and sex trafficking by coercion in violation of 18 U.S.C.

§§ 1591(a)(1) and 1591(b)(1) (Counts 6 and 7).  Case No. 22-cr-53, Docket Item 14.

On April 26, 2022, the Court heard oral argument on Fox's appeal of Judge

Roemer's detention order and reserved decision.  Docket Item 18.  The next day, the

government filed a letter making further arguments in support of its position, Docket

Item 19, and Fox filed a letter in response, Docket Item 20.

## APPLICABLE LAW

### I.  REVIEW OF A DETENTION ORDER

"In reviewing a detention order of a magistrate judge, a district judge should not

simply defer to the judgment of the magistrate judge, but rather must reach [his or] her

own independent conclusions."  *United States v. Enix*, 209 F. Supp. 3d 557, 563–64

(W.D.N.Y. 2016) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)).  When

conducting this "*de novo review*, the district court may rely on the record of the

proceedings before the magistrate judge and may also accept additional evidence."  *Id.*

(quoting *United States v. Marra*, 165 F.Supp.2d 478, 481 (W.D.N.Y. 2001)).

### II.  PRETRIAL DETENTION

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that

no condition or combination of conditions will reasonably assure the appearance of the

[defendant] as required and the safety of any other person and the community, such

judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C.

§ 3142(e)(1).  "The judicial officer shall, in determining whether there are conditions of

release that will reasonably assure the appearance of the person as required and the

6

safety of any other person and the community, take into account the available

information concerning—

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

Judicial findings under the statute require different standards of proof.  A finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence," *id.* § 3142(f); on the other hand, a finding that a defendant poses a risk of flight need be supported only by a preponderance of the evidence.  *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011).  The inquiry with respect to flight is two-part: "First, the court must make a finding as to whether the defendant presents a risk of flight if not detained.  Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released."  *United States v. Shakur*, 817 F.2d 189, 194–95 (2d Cir. 1987) (citations omitted).  The Court's findings do not need to be supported by testimony

under oath, as "[i]t is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

Here, the criminal complaint—and now the indictment—charge the defendant with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A), as well as an "offense under section 924(c) [of Title 18]," 18 U.S.C. § 3142(e)(3)(B).  Therefore, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community."  *See* 18 U.S.C. § 3142(e)(3).[3]

As the Second Circuit has explained, "[w]here there is such a presumption, the defendant 'bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'"  *English*, 629 F.3d at 319 (quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001)).  "Satisfying the burden of production does not eliminate the presumption favoring detention," however; rather, the presumption "remains a factor to be considered among those weighed by the district court." *Id.* (quoting *Mercedes,* 254 F.3d at 436).  But "[a]t all times . . . 'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of

---

[3] Either of these two statutory prerequisites gives rise to the presumption.

the evidence that the defendant presents a risk of flight.'"   *Id.* (quoting *Mercedes,* 254 F.3d at 436).

## ANALYSIS

The Court has carefully reviewed the parties' submissions and considered their respective arguments.  Based upon its review of the record and the factors set forth in 18 U.S.C. § 3142(g), including consideration of the rebuttable presumption, the Court concludes as follows:  Fox has met his burden of production with respect to the rebuttable presumption; the government has established by a preponderance of the evidence that Fox presents a risk of flight, but there is a combination of conditions that reasonably will assure his presence at trial if he is released; and the government has not established by clear and convincing evidence that Fox presents a risk of danger for which there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.  As a result, Judge Roemer's order of detention is vacated, and the defendant shall be released once he satisfies the bail conditions set forth below.

## I.    18 U.S.C. § 3142(G) FACTORS

### A.    Nature and Circumstances of the Charged Offense

There is no question that Fox has been charged with serious drug, weapon, and sex-trafficking offenses.  Among other things, the government has proffered that its evidence will include testimony from two victims that Fox "would leverage the victims' addiction to get them to engage in extreme sexual acts, to include binding the women to his bed and other furniture so that he could engage in sex with them, anally raping

them, shocking the women in their vaginas using a dildo capable of delivering an electric shock, and restraining the women to a large 'X' type structure."  Docket Item 8 at 5.  According to the government, one of those victims "overdosed on heroin supplied to her by [Fox]."  *Id.* at 12.  Moreover, Fox faces significant time in prison if he is convicted.  *See id.* at 9 (explaining that "[o]n Counts 4, 5, 6, and 7, the defendant faces mandatory minimum terms of imprisonment of 5, 20, 15, and 15 years, respectively").

Thus, this factor weighs against release.  That being said, "this is simply the first of the § 3142(g) factors" and is only "one factor in the analysis."  *Enix*, 209 F. Supp. 3d at 564-65 (ordering release on conditions where the defendant was "charged with some very serious crimes, including a RICO conspiracy that involved a pattern of racketeering activity involving murder, robbery, kidnapping, drug trafficking, and obstruction of justice as part of its predicate acts"); *see also United States v. Mattis*, 963 F.3d 285, 287 (2d Cir. 2020) (affirming release on $250,000 bond and home detention where the defendants were charged with throwing a Molotov cocktail into a police vehicle).

### B.   Weight of the Evidence

The weight of the evidence "is considered the least important" of the § 3142(g) factors.  *United States v. Parker*, 65 F. Supp. 3d 358, 365 (W.D.N.Y. 2014).  That is both "because it is inherently difficult to assess the Government's case before trial" and because "a defendant must be presumed innocent."  *Id.* (citing *United States v. Fama*, No. 13 Cr. 234 (JFK), 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013)).

The parties vehemently disagree about which way this factor cuts here. *Compare* Docket Item 3 at 24 (Fox's arguing that "[t]o the extent the Court puts stock in this factor, it favors release"), *with* Docket Item 8 at 13 (the government's arguing that

10

"[t]he weight of the evidence against the defendant is extremely strong and supports a pretrial order of detention").

Ultimately, this Court agrees with Fox that "[r]esolution of this stalemate will have to await trial."  Docket Item 13 at 13.  Although the government seems confident in its case, Fox seems equally confident about his potential explanations and defenses.  Among other things, he notes that he passed a polygraph in which he was asked several times whether he had ever had non-consensual sex with anyone and answered "no."  Docket Item 13 at 33.  Moreover, much of the case will likely hinge on the credibility of the government's witnesses—an assessment the Court is unable to make at this juncture.  Thus, the Court finds that this factor is, at best for the government, neutral.

### C.    History and Characteristics of the Defendant

It is undisputed that Fox is a lifelong resident of Western New York and has strong ties to the area.  Docket Item 3 at 28; Docket Item 8 at 18.  His parents have offered to secure his bail with their home, and his father has agreed to serve as a third-party custodian.  Docket Item 3 at 28.

Fox is well-educated and, before his arrest, worked as a financial planner with a focus on helping families with special-needs children.  Docket Item 3 at 12-13.  He describes his financial picture as "modest," particularly following the loss of his job.  *Id.* at 28.

Fox is in good physical health, and while there are some concerns about his mental health—in particular, his admitted sex addiction and past drug abuse—he has attended counseling and under the proposed conditions of release would be evaluated

11

and obtain additional treatment.  *Id.* at 27.  He has no criminal record, and he has never been on parole or probation.  *Id.* at 29.

The government expresses concern about Fox's sexual preferences, noting, among other things, that it had seized "printed material involving BDSM activities" from his residence.  Docket Item 8 at 17.[4]  But Fox and his girlfriend, Rachel Dellavalle ("Dellavalle"), both submit that they "have a preference for safe, consensual BDSM sex."  Docket Item 3 at 15.  Dellavalle has "confirmed that she is the woman depicted in all of [the photos presented by the government]" and that "[a]ll of these ideas were *mine* not his, I came up with them and wanted them + wasn't forced!"  Docket Item 4 at 3 (emphasis in original).

This Court agrees with Fox that his preference for consensual BDSM sex is not a factor that weighs against him.  *See* Docket Item 3 at 35 (Fox's noting that "[p]erhaps the Government's representatives disapprove of BDSM and sex toys, but the only line the law draws is the one dividing consensual sex from non-consensual sex").  And while the allegations of non-consensual sex are deeply concerning, Fox vehemently disputes those allegations and, as noted above, passed a polygraph in which he denied any non-consensual sex.

All in all, the Court finds that Fox's personal characteristics, and especially his strong family ties and lack of any criminal history, weigh in favor of his release.

---

[4]  "BDSM 'refers to a physical, psychological, and sexual role-play involving power exchange between consensual participants.'"  Docket Item 3 at 15 (quoting Nele de Neef et al., *Bondage-Discipline, Dominance-Submission and Sadomasochism (BDSM) from an Integrative Biopsychosocial Perspective: A Systematic Review*, 7 SEXUAL MEDICINE 129, 129 (2019)).

### D.    Nature and Seriousness of the Danger Posed to any Person or the Community

Last, but certainly not least, is the nature and seriousness of the danger Fox poses to any person or the community.  On this point, Fox argues that "the misconduct attributed to [him] is all historical."  Docket Item 3 at 7.  "He has not patronized any escorts since September 2020," he says, "and [he] has not kept drugs in the house since his girlfriend got clean around the spring of 2021."  *Id.* at 7-8.  He argues that all this is evidenced by the fact that "the physical and pole-camera surveillance the Government used to surreptitiously monitor [him] between December 2021 and February 2022 uncovered no drug activity, no escort activity, and no illegality of any other kind."  *Id.* at 8.  Moreover, he notes that "when federal agents executed a search warrant at [his] residence on February 3, 2022, they found no drugs, no drug residue, and no drug paraphernalia," and his "unused shotgun was locked in a safe."  *Id.*

The government strongly disagrees that Fox's misconduct is in the rear-view mirror, pointing to (1) January 2022 internet searches; (2) January 2022 text messages; and (3) a March 2022 jail call between Fox and Dellavalle.  The Court will address each in turn.

First, the government notes that "a preliminary review of the defendant's phone revealed [G]oogle searches in January of 2022 for 'when u burn someones asshole'; 'word for buring veins together'; 'bed frame with built in kennel'; 'bdsm bed frams'; 'buffalo escorts' and several phone numbers that relate back to escort advertisements."  Docket Item 8 at 10; *see* Docket Item 8-2 at 10-14.  According to the government, "[i]nternet search history on the defendant's phone" and notes stored in one of his

13

phone contacts "also showed recent activity and research involving escorts."  Docket Item 8 at 10; *see* Docket Item 8-2 at 9, 15-16.

As an initial matter, as discussed above, Fox's preference for consensual BDSM sex is irrelevant.  None of the searches suggest that Fox was or is contemplating non-consensual sex.  Moreover, there is no evidence that Fox actually engaged in any commercial sex act after 2020.  That he was conducting internet searches is not enough to show that he intended to follow through.  Indeed, as defense counsel notes, "[i]f Mr. Fox wanted to resume patronizing escorts, he obviously knew how."  Docket Item 13 at 4.

Next, the government points to text message exchanges with apparent escorts. Docket Item 8 at 10; *see* Docket Items 8-3 and 8-4.  Again, however, there is no evidence that Fox followed through on those efforts.  More important for purposes of this appeal, there is no reason to believe that Fox would continue any such exchanges while his electronic devices were being monitored by the government.

Finally, the government relies on a recent phone call between Fox and Dellavalle—the transcript of which the government insisted on playing in open court. Docket Item 8 at 10-12.  This Court agrees with Fox that this "call proves nothing relevant to this proceeding."  Docket Item 13 at 12.  During the call, "Fox references other women in [a] fantasy scenario he is painting for Ms. Dellavalle's benefit," but "[d]irty talk about other women" in a consensual relationship "does not foretell future commercial sex acts or drug activity."  *Id.*  So while playing the call in Court may have succeeded in embarrassing Fox and making others uncomfortable, it did not add to the government's argument in any meaningful way.

14

Noticeably absent from the government's brief is any explanation of how the numerous proposed conditions would not mitigate any potential risk of danger or flight. Nor was the government able to convincingly answer that question at oral argument. On the contrary, with respect to the risk of flight, the government all but conceded that Fox would not be a flight risk with the proposed conditions. And with respect to danger, other than repeatedly referencing Fox's sex addiction, the government provided no reason to believe that Fox would jeopardize his freedom by engaging in illegal activity while being closely monitored. Nor has the government presented any evidence of recent drug activity.

At oral argument, the government instead implored this Court to ask: "what if?" To be sure, that is a powerful question and one that haunts this Court in every case in which it must decide whether an individual accused of a crime should be released. But it is not the question that the law requires this Court to ask—and with good reason. If "what if" were the proper inquiry, virtually no one indicted for a serious crime would ever go free. And that would undermine the constitutional pillar that one is assumed innocent until proven guilty.

In sum, this Court simply cannot find with the required "high degree of certainty" that Fox will engage in any drug activity or solicitation of escorts while all his electronic devices are monitored, he is confined to his parents' home and in his father's custody, and there is a camera with a live feed available to the government and the Probation Office documenting anyone who comes into or out of the house.[5]  *See Enix*, 209 F.

---

[5] At oral argument, defense counsel confirmed that Fox was willing to install cameras at his own expense. The Court rejects the government's contention that Fox's

Supp. 3d at 563 (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.

1985)).  Thus, this Court finds that this final factor, too, supports release.

* * *

For all those reasons, this Court finds that Fox should be released pending trial

under the conditions outlined below.

### E.    Conditions of Release

The Court agrees with most of the conditions proposed by Fox—with three

exceptions.

First, Fox proposes that he reside with Dellavalle at his home and that his father,

as custodian, check in on him.  The Probation Office indicated at oral argument that it

was opposed to Fox returning to his residence and, instead, would recommend

requiring Fox to reside with his parents.  This Court agrees that to sufficiently mitigate

Fox's risk of danger to the community, it is necessary for him to reside with his parents

at their residence.

Second, Fox proposes that he be placed on "home detention," which "means that

[he] is restricted to his residence at all times except for employment; education; religious

services; medical, substance-abuse, or mental-health treatment; attorney visits; court

appearances; court-ordered obligations; or other activities as pre-approved by the

Probation Office."  Docket Item 3 at 9.  At oral argument, the Court and defense counsel

discussed "home incarceration," which is a more restrictive program under which the

---

installing security cameras is akin to a "self-funded private jail[ ]."  *See* Docket Item 19
(quoting *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019)).  Moreover, the
government's concern regarding "who would monitor the cameras 24 hours a day," *id.*,
can be addressed by requiring Fox to preserve the footage for later review.

16

defendant can leave his home only for medical necessities, court appearances, or other activities specifically approved by the Court.  The Court finds that the more restrictive home incarceration is necessary to mitigate Fox's risk of flight and danger—at least at this point.  If Fox demonstrates that he can comply with the terms of his pretrial supervision, he may move to amend the conditions of release down the road.

Finally, the Court agrees with the Probation Office's recommendation that Fox must avoid all contact, directly or indirectly, with any person who is or may be a witness in this case—a condition that was not included in Fox's proposal.

## II.      THE GOVERNMENT'S REQUEST FOR A STAY

Following oral argument, the government requested that "should the Court determine that release of the defendant is appropriate, . . . the Court stay such a release order so that [it] can determine whether [to] seek a further appeal."  Docket Item 19.  As the defendant aptly noted in response, "[d]etention is a monumental imposition on personal freedom," and "[i]f adequate release conditions exist, the Court should not delay vindicating Mr. Fox's liberty interest just so the Government can mull the *possibility* of an appeal."  Docket Item 20 at 2 (emphasis in original).  Moreover, as the defendant observed, the standard of review on appeal is highly deferential.  *See id.* (citing *Mattis*, 963 F.3d at 290).

For all those reasons, the government's request for a stay is denied.  Should the government decide to appeal, it is free to petition the Second Circuit for such relief.  *See Mattis*, 963 F.3d at 290 (noting that Second Circuit had granted the government's

17

emergency motion for a stay and ordered that the appeal be heard on an expedited basis).

## **CONCLUSION**

For all the reasons stated above, this Court finds that the government has not shown by a preponderance of the evidence that no condition or combination of conditions will ensure the appearance of the defendant.  Nor has the government shown by clear and convincing evidence that no condition or combination of conditions will ensure the safety of any other person and the community.  Therefore, the detention order issued by United States Magistrate Judge Roemer (Case No. 22-cr-53, Docket Item 7) is VACATED, and the defendant is hereby ordered released pending trial on the following conditions:

1.  The defendant must post with the Court a bond, in a form approved by the Court, in the amount of $300,000 secured by the agreement of the defendant and each surety to forfeit the property owned by the defendant (981 Beach Road, Cheektowaga, New York), and the property owned by the defendant's parents (4689 Hedgewood Drive, Clarence, New York), based upon evidence that the defendant and the sureties hold a total equity value in the properties of at least $300,000.  The agreement and bond shall be posted to secure the defendant's appearance at all proceedings as required, and to secure the defendant's compliance with all the conditions set forth herein.  The failure to appear as required or otherwise comply with the conditions set forth herein shall result in forfeiture of the properties securing the $300,000 bond.

2.  The defendant must reside at his parents' residence (4689 Hedgewood Drive, Clarence, New York).

3.  The defendant shall be placed in the custody of his father, Donald Fox, who must execute an agreement promising to (a) supervise the defendant in accordance with all conditions of release; (b) use every effort to assure the appearance of the defendant at all scheduled court proceedings; and (C) notify

the Court immediately if the defendant violates any conditions of release or is no longer in his custody.

4.  The defendant shall participate in the "home incarceration" location-restriction program and abide by all the requirements of the program, which will include electronic monitoring.  The defendant shall pay all or part of the costs of the program based upon his ability to pay as determined by the Probation Office. "Home incarceration" means that the defendant is restricted to his residence (4689 Hedgewood Drive, Clarence, New York) at all times except for medical necessities, court appearances, or other activities specifically approved by the Court.

5.  The defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with electronic monitoring that is required as a condition of release.

6.  The defendant shall participate in the computer/internet monitoring program administered by the U.S. Probation Office.  The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s), including cell phones, that he may use.  The defendant shall not access the internet from any other device.  The U.S. Probation Office is authorized to install any application as necessary on computer(s) or connected device(s) owned or operated by the defendant.  The defendant may be required to pay the cost of monitoring services at a monthly rate provided by the U.S. Probation Office.  The U.S. Probation Office shall randomly monitor the defendant's computer(s), connected device(s), and/or storage media.  The defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant, including but not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection.

7.  The defendant shall not utilize the internet or any other means to search for, review, or access sites related to escorts, and the defendant shall not contact, attempt to contact, associate with, or be in the presence of any person holding herself or himself out as an escort.

8.  The defendant shall, at his own expense, install security cameras covering each entrance to the residence at 4689 Hedgewood Drive, Clarence, New York,

and recording everything captured by all cameras, and shall (a) make the live feed to those cameras available to the government and the Probation Office; and (b) preserve all footage for later review by the government and/or the Probation Office.

9.  The defendant shall avoid all contact with any person who is or may be a witness in this case.

10.  The defendant shall report to Pretrial Services within 24 hours of release and as directed by the U.S. Probation Officer.

11.  The defendant shall surrender any passport/passport card to the Clerk of the Court and surrender other international travel documents to the appropriate authorities.

12.  The defendant shall not obtain a new passport or other international travel documents.

13.  The defendant's travel is restricted to the Western District of New York, unless Court permission is granted to travel elsewhere.

14.  The defendant shall not possess any firearm, ammunition, or destructive device.

15.  The defendant shall submit to a mental-health evaluation and/or treatment as approved by the Probation Office, including co-pay; such evaluation shall include an assessment for sex addiction and treatment as determined appropriate.

16.  The defendant shall not use alcohol.

17.  The defendant shall not use or possess a narcotic drug unless prescribed for him by a licensed medical provider.

18.  The defendant shall submit to drug/alcohol testing and/or treatment as directed by the Probation Office, including co-pay.

19.  The defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited-substance testing that is required as a condition of release.

20.  The defendant shall not use or possess any device with internet access, including but not limited to game systems (PlayStation 3, PSP, Xbox, Wiii) and cellular phones, that is not subject to the monitoring described above in paragraph 6.

21.  The defendant shall report within 72 hours to the Probation Office any contact with any law-enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

SO ORDERED.

Dated:   May 5, 2022
         Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE