UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

v.                                                          22-CR-53 (JLS) (JJM)

JAMES P. FOX, and
RACHEL DELLAVALLE,

                Defendants.

───────────────────────────────

## DECISION AND ORDER

Defendants James P. Fox and Rachel Dellavalle are charged in a thirteen-count superseding indictment returned on November 1, 2022. *See* Dkt. 48.[1] Both Defendants filed severance motions pursuant to Federal Rules of Criminal Procedure 8 and 14. Dkt. 91, 96. In addition, Dellavalle requests a "speedy trial." *See* Dkt. 91 at 3.[2] The Government opposed Defendants' motions. Dkt. 103.

───────────────────────────────

[1] Count 9 (witness tampering) is brought against Dellavalle alone. Count 10 (sex trafficking by coercion as to victim M.K.) and Count 11 (distribution of heroin causing serious bodily injury as to victim M.K.) are brought against Fox and Dellavalle. The remaining Counts are brought against Fox alone (*i.e.*, Count 1 (distribution of heroin), Count 2 (distribution of cocaine base), Count 3 (using and maintaining a drug-involved premises), Count 4 (possession of firearm in furtherance of drug trafficking), Count 5 (distribution of heroin causing serious bodily injury as to victim T.P.), Count 6 (sex trafficking by coercion as to victim T.P.), Count 7 (sex trafficking by coercion as to victim D.M.), Count 8 (sex trafficking by coercion as to victim A.M.), Count 12 (sex trafficking by coercion as to victim K.H.), and Count 13 (making a false statement)).

[2] Unless noted otherwise, all page references are to those automatically generated by CM/ECF, which appear in the header of each page.

Neither Defendant replied. For the reasons that follow, Defendants' motions (Dkt. 91, 61) are DENIED.

## DISCUSSION

### I. DEFENDANTS' SEVERANCE MOTIONS

Each Defendant argues that severance is appropriate under Federal Rule of Criminal Procedure 8 due to misjoinder and/or Rule 14 due to prejudice.[3]

Fox argues that, if he is tried jointly with Dellavalle, a "2022 interview of co-defendant Dellavalle" will be admitted in violation of Fox's Sixth Amendment rights under the rule set forth in *Bruton v. United States*, 391 U.S. 123 (1968). *See* Dkt. 96 at 6-8. He further argues that he will be unable to call Dellavalle as a witness on his behalf, and that Count 9 (witness tampering) will cause prejudice to him because the charge is asserted only against Dellavalle. *See id.*

Dellavalle argues that the superseding indictment "fails to allege that each of the defendants participated in the 'same series of acts' within the meaning of Rule 8(b)." *See* Dkt. 91 at 6. She further argues that, because Fox is the "primary actor in this case," she, too, will suffer from "spill-over prejudice" due to the charges against Fox. *See id.* at 7. For the reasons that follow, severance is inappropriate.

---

[3] The parties' submissions are, at times, unclear as to the rule under which arguments are asserted. The Court has considered each argument raised for all applicable purposes, and analyzes each argument under the appropriate rule and standard.

2

### A. Legal Standards

   1. <u>Rule 8</u>

Rule 8 of the Federal Rules of Criminal Procedure governs claims of misjoinder. It provides:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge [two] or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. If offenses or defendants are improperly joined under Rule 8, a party need not demonstrate it would suffer prejudice if the court were to deny severance. *See United States v. Feyrer*, 333 F.3d 110, 113 (2d Cir. 2003) ("Unless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice.").

Courts analyze whether offenses are properly joined under Rule 8(a). *See United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991) (joinder of offenses permitted "where they 'are based on . . . two or more acts or transactions connected together'") (quoting Fed. R. Crim. P. 8(a)). When analyzing joinder of offenses under Rule 8(a), "no one characteristic is always sufficient to establish similarity of offenses, and each case depends largely on its own facts." *Id.* (internal quotation marks and citations omitted).

Claims that an indictment improperly joined defendants, on the other hand, fall under Rule 8(b). *See United States v. Cervone*, 907 F.2d 332, 340–41 (2d Cir. 1990) (Rule 8(b) "states that participation of multiple defendants in the 'same act or transaction,' or the same 'series' of such acts, will authorize joint trial on common or individual counts") (quoting Fed. R. Crim. P. 8(b)). Where—as here—a court considers severance motions in a case involving multiple defendants, it applies the stricter Rule 8(b) standard. *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988). As a result, "multiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a 'series of acts or transactions constituting an offense or offenses.'" *Id.* (quoting Fed. R. Crim. P. 8(a), (b)).

The Second Circuit has "construed [Rule 8(b)] to mean that joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *Cervone*, 907 F.2d at 341 (internal quotation marks and citations omitted). When evaluating joinder under Rule 8(b), courts "apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)) (internal quotation marks omitted). The Rule 8(b)

4

inquiry "turns on what is 'alleged' in the 'indictment,'" and any events that may "transpire at trial are not relevant." *Id.* at 178 (quoting Fed. R. Crim. P. 8(b)).

Further, joinder of defendants may be proper even where, as here, the defendants are not charged together in a single, overarching conspiracy. *See Rittweger*, 524 F.3d at 178 ("Provided that the defendants are 'alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses,' . . . members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy.") (quoting Fed. R. Crim. P. 8(b)). *See also Feyrer*, 333 F.3d at 114 (defendants properly joined where "neither . . . was charged in the conspiracy counts of the other" and "the only defendant charged with participating in both conspiracies[] pled guilty prior to trial," where "the two conspiracies shared a common plan").

### 2. Rule 14

Even if offenses or defendants are properly joined under Rule 8, the Court may grant severance if a party would suffer prejudice from a trial at which offenses or defendants are tried together. *See Feyrer*, 333 F.3d at 114; *Blakney*, 941 F.2d at 116. Rule 14 provides: "If the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

To prevail under Rule 14, the moving party must demonstrate "substantial prejudice," which entails showing that a miscarriage of justice would occur if severance were denied. *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984). The moving party must show more than "simply . . . a better chance of acquittal" if severance were granted, *id.*, or that "a separate trial would have benefitted the defendant" in some way, *Cervone*, 907 F.2d at 341. Prejudice that may justify severance exists "only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Rittweger*, 524 F.3d at 179 (quoting *Zafiro v. United States,* 506 U.S. 534, 539 (1993)).

When assessing prejudice under Rule 14, courts consider "to what extent the evidence presented at the joint trial would have been admitted at a single-defendant trial because of the alleged conspiratorial nature of the illegal activity." *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990). Courts also consider "whether the jury was instructed to assess the evidence against each defendant separately from the proof against the other defendants." *Id.* That evidence may be admissible against one defendant but not the other, however, does not automatically require severance. *See Rittweger*, 524 F.3d at 179. In such situations, courts also consider whether "the evidence with respect to each of the defendants [is] sufficiently straightforward that the jury [can] consider it without any significant spillover effect." *Id.*

The Supreme Court "has recognized [that] limiting instructions are often sufficient to cure any risk of prejudice." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro*, 506 U.S. at 539). *See also Feyrer*, 333 F.3d at 114 (even "where the risk of prejudice is high[,] . . . less drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion"). For example, careful use of limiting instructions "throughout the trial explaining when evidence could not be considered against a particular defendant," and a final jury charge that "carefully explain[s] that the jurors must consider the case against each defendant separately," can mitigate any prejudice resulting from joinder. *Rittweger*, 524 F.3d at 179.

Other relevant factors courts may consider in the Rule 14 analysis include: (1) "the number of defendants and the number of counts;" (2) "the complexity of the indictment;" (3) "the estimated length of the trial;" (4) "disparities in the amount or type of proof offered against the defendants;" (5) "disparities in the degrees of involvement by defendants in the overall scheme;" (6) "possible conflict between various defense theories or trial strategies;" and (7) "prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1986).

No single factor is dispositive; rather, "the ultimate question is whether the jury can keep the evidence relevant to each defendant separate and render a fair and impartial verdict as to each defendant." *United States v. Locascio*, 357 F. Supp.

2d 536, 543 (E.D.N.Y. 2004) (citing *Gallo*, 668 F. Supp. at 749). A court's "assessment of the risk of prejudice is . . . fact specific . . . and depends on the circumstances of each case." *Id.* at 543. And whether to grant severance under Rule 14 "falls within the discretion of the trial court." *Potamitis*, 739 F.2d at 790.

### B. Analysis

#### 1. Fox

Fox argues that a joint trial would result in prejudice to him in three ways: (1) introduction of a "February 2022 interview of co-defendant Dellavalle" at a joint trial violates Fox's rights under the Confrontation Clause of the Sixth Amendment;[4] (2) a joint trial precludes Fox from calling Dellavalle as a witness on his behalf; and (3) a joint trial that includes Count 9 will cause spillover prejudice to Fox. *See* Dkt. 96. These arguments lack merit.

##### a. The February 2022 Interview

According to Fox, "the defense expects the government to introduce the February 2022 interview of co-defendant Dellavalle at trial." *Id.* at 6. He argues that admission of such evidence "would violate the *Bruton* rule as well as the Confrontation Clause" because Fox "would be unable to cross-examine Dellavalle [if] she chose to remain silent." *Id.* at 7. For this reason, Fox argues, each Defendant should be tried separately. The Court disagrees.

---

[4] The Government attached as Exhibit 1 to its opposition brief a Department of Homeland Security investigative report, dated February 7, 2022, which sets forth details of an interview with Dellavalle that purportedly took place on February 3, 2022. *See* Dkt. 103-1.

The Sixth Amendment's Confrontation Clause guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI. This clause "forbids the introduction of out-of-court 'testimonial' statements unless the witness is unavailable and the defendant has had the chance to cross-examine the witness previously." *Samia v. United States*, 599 U.S. 635, 643 (2023). In *Bruton v. United States*, the Supreme Court "'recognized a narrow exception to' the presumption that juries follow their instructions, holding 'that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial,' even with a proper instruction." *Samia*, 599 U.S. at 647 (quoting *Richardson v. Marsh*, 481 U.S. 200, 207 (1987)).

The Supreme Court subsequently recognized an "important distinction" between a confession that is "incriminating on its face" and one that becomes incriminating "only when linked" with other evidence introduced at trial. *Richardson*, 481 U.S. at 208. The Court "decline[d] to extend [*Bruton*] further" to "confessions that do not name the defendant." *Id.* at 211. Later, the Court "qualified" that decision by "holding that certain obviously redacted confessions might be 'directly accusatory,' and thus fall within *Bruton*'s rule, even if they did not specifically use a defendant's name." *Samia*, 599 U.S. at 647 (quoting *Gray v. Maryland*, 523 U.S. 185, 194 (1998)). Thus, "the Court's precedents distinguish between confessions that directly implicate a defendant and those that do so indirectly." *Id.* at 648.

9

Here, the February 3, 2022 investigative report is not "facially incriminating" as to Fox. *See Samia*, 599 U.S. at 647; *Richardson*, 481 U.S. at 207; *Bruton*, 391 U.S. at 134. The report includes a variety of purported statements allegedly made by Dellavalle, including that Fox drove her to purchase drugs,[5] purchased drugs for her, and paid her and other individuals for sex. *See* Dkt. 96 at 6; Dkt. 103-1. But such statements do not, standing alone, expressly implicate Fox in any charged crime. Indeed, the report does not include any discussion of commercial sexual activity or sexual activity that took place by force, fraud, or coercion. Nor is there any discussion of drug distribution by Fox. The statements contained in the report, therefore, are not "incriminating on [their] face," and may become so only if "linked with evidence introduced later at trial." *Richardson*, 481 U.S. at 208. As such, admission of the report at a joint trial, accompanied by a limiting instruction, does not run afoul of *Bruton* and related authorities.

### b. *Unavailability of Dellavalle as a Witness*

Fox also argues that severance is appropriate because Dellavalle would be unavailable to testify on his behalf at a joint trial. *See* Dkt. 96 at 8. This argument, too, is unavailing.

A request to sever based on purportedly exculpatory statements from a co-defendant falls under the Rule 14 prejudice analysis. *See United States v. Ferguson*, 676 F.3d 260, 286–87 (2d. Cir. 2011). The Second Circuit has identified four factors

---

[5] The government "agrees to redact" the "portion of Dellavalle's statement which states that Fox drove her to purchase drugs." Dkt. 103 at 10. Such redaction resolves the issue as to this point.

trial courts may consider when evaluating severance motions based on a co-defendant's purported willingness to testify: (1) "the sufficiency of the showing that the co-defendant would testify at a severed trial and waive [her] Fifth Amendment privilege"; (2) "the degree to which the exculpatory testimony would be cumulative"; (3) "the counter arguments of judicial economy"; and (4) "the likelihood that the testimony would be subject to substantial, damaging impeachment." *United States v. Finkelstein*, 526 F.2d 517, 523–24 (2d Cir. 1975). Courts are not constrained to these factors; the factors "merely define the perimeters of the severance question—the crucial inquiry remains whether the appellants were so prejudiced by a joint trial under these circumstances that severance should have been granted." *Id.* at 523.

Here, Fox would like to call Dellavalle to testify "about how *she*," not Fox, "was the person who injected Victim 4 with heroin," and further testify "that sexual activity with Victim 4 was consensual." Dkt. 96 at 8 (emphasis in original). Fox further contends that Dellavalle can testify as to "the other alleged victims [and] the consensual nature of the sexual activity at issue." *Id.* He also believes she can provide additional testimony "which would challenge FRE 413/404(b) evidence" he expects the government to present at trial. *Id.*

In light of the *Finkelstein* factors, Fox has not established that severance is warranted due to the purported unavailability of Dellavalle to testify on his behalf at a joint trial. First, Fox fails to demonstrate that that Dellavalle would, in fact, "testify at a severed trial and waive [her] Fifth Amendment privilege." *See*

11

*Finkelstein*, 526 F.2d at 523. The Court is not persuaded that a separate trial would eliminate any Fifth Amendment concerns Dellavalle may have. To this Court's knowledge, Dellavalle has indicated no willingness to plead guilty. Indeed, where the co-defendant had not pled guilty or indicated an intention to do so, "it is unrealistic to think that [she] would be any more willing to waive [her] constitutional privilege against self-incrimination when called as a witness at a separate trial than [she] would be willing to insist upon [her] privilege as a defendant not to take the stand." *Id.* (internal quotation marks and citation omitted). *See also United States v. Wilson*, 11 F.3d 346, 354 (2d Cir. 1993) (where co-defendant purportedly willing to testify "had not pleaded guilty, it was unrealistic to think that [she] would be any more willing to waive his privilege at a separate trial than at the joint trial").

Second, much of Dellavalle's purported testimony is likely to be cumulative, given the availability of Victim 4 as a witness and the fact that cross-examination may elicit similar testimony. *See Finkelstein*, 526 F.2d at 524 (co-defendant's testimony may be cumulative even if "repetition of such testimony might . . . increase[] the likelihood that it would be believed"). Further, the lack of specific detail regarding several aspects of Dellavalle's purported testimony also weighs against severance. *See United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984) ("The substance of the allegedly exculpatory testimony is not detailed in the various affidavits, and we are thus unable to weigh the importance of any of that testimony against the evidence presented against [the defendant] at trial."). *See also*

*Finkelstein*, 526 F.2d at 523 (affirming denial of severance motion even where defendant offered detailed topics that co-defendants would testify about).

Third, this trial is likely to be lengthy and involve many witnesses, taxing the resources of the Government, witnesses, victims, prospective jurors, the Court, and Defendants. And fourth, Dellavalle is jointly charged with Fox in two counts of the Superseding Indictment, subjecting her to significant cross-examination regarding her credibility. Under these circumstances, a joint trial, where Fox is unable to elicit purportedly exculpatory testimony from Dellavalle, will not result in substantial prejudice to Fox.

### c. Spillover Prejudice from Count 9

Lastly, the Court is not persuaded that Fox will be "substantially prejudiced" at a joint trial due to spillover prejudice from Count 9. Indeed, he fails to show that a "miscarriage of justice" will result where, at a joint trial, one charge of witness tampering is brought against a co-defendant on top of twelve charges relating to— among other things—sex trafficking by coercion, drug distribution, and possession of firearms, are brought against Fox. *See Potamitis*, 739 F.2d at 790. The Court is confident that, with the proper instructions, the jury will be able to "keep [any] evidence relevant to each defendant separate and render a fair and impartial verdict as to each defendant." *See Locascio*, 357 F. Supp. 2d at 543; *United States v. Hernandez*, 85 F.3d 1023, 1029–30 (2d Cir.1996) (rejecting a claim of confusion and spillover prejudice where trial court instructed jurors "to consider the evidence against each defendant individually for each count").

2. Dellavalle

Dellavalle seeks severance on two bases: misjoinder and prejudice. But she fails to demonstrate that severance is appropriate under either Rule 8(b) or Rule 14.

*a. Misjoinder under Rule 8(b)*

The superseding indictment properly joins the charges against Dellavalle with the charges against Fox. A holistic view of the superseding indictment reveals that Fox and Dellavalle "are alleged to have participated" in both "the same act or transaction" and "the same series of acts or transactions[] constituting an offense or offenses." *See* Fed. R. Crim. P. 8(b).

Counts 1-13 of the superseding indictment depict an ongoing scheme that allegedly took place from approximately 2018 to 2022. The scheme involved alleged sex trafficking by coercion of five different victims, which gives rise to five of the thirteen counts (Counts 6, 7, 8, 10, 12). The remaining counts are logically related to the sex-trafficking charges. Two counts allege heroin distribution causing serious bodily injury to two of the sex-trafficking victims (Counts 5, 11). And relatedly, Fox is charged with using and maintaining a drug-involved premises, possession of a firearm in furtherance of drug trafficking, distribution of heroin and cocaine base, and making a false statement regarding "the last time he used an escort." (Counts 1, 2, 3, 4 and 13). Joinder is proper under Rule 8(b) because that Fox and Dellavalle are charged together with two counts arising out of this scheme: one count of sex trafficking by coercion and one count of heroin distribution causing serious bodily injury—both relating to victim M.K. (Counts 10 and 11).

Dellavalle's arguments to the contrary do not change the analysis. First, she argues that joiner is improper because she, alone, is charged with witness tampering (Count 9), based on conduct that allegedly occurred after Fox engaged in sex trafficking of victims other than M.K. However, joinder is proper under Rule 8(b) because the superseding indictment alleges that Fox and Dellavalle participated in the same series of acts or transactions, and alleges that Count 9 is part of that series of transactions. In particular, Count 9 alleges that Dellavalle engaged in misleading conduct "relating to the commission and possible commission of Federal offenses" by Fox. *See* Dkt. 48 at 5. Second, Dellavalle argues that joinder is improper because she, herself, was initially viewed as a victim in this case. *See* Dkt. 91 at 4. But even if she was, at one point, a victim of the scheme, that does not foreclose the possibility that she later committed acts in furtherance of the scheme, as alleged here.

In sum, because the criminal acts that Fox and Dellavalle are alleged to have committed are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme," *see Cervone*, 907 F.2d at 341, joinder is proper under Rule 8(b).

### b. *Prejudice under Rule 14*

The Court next considers whether a joint trial of Fox and Dellavalle would result in impermissible, substantial prejudice to Dellavalle, counseling severance under Rule 14. Dellavalle argues that there is a "significant likelihood" of spillover prejudice involving the charges against Fox, whom she purports "is the primary

actor in this case." Dkt. 91 at 7. According to Dellavalle, severance is warranted because a joint trial would involve "admission of highly incriminating evidence that is due solely to the acts of Mr. Fox alone, and that is admissible only against Mr. Fox." *Id.* The Court disagrees.

It is well-settled that "'the fact that [certain] evidence may be admissible against one defendant but not another does not require a severance." *United States v. Tuzman*, 301 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) (quoting *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983)). And the Second Circuit has rejected severance arguments based on supposed "disparity of proof prejudice." *See Locascio*, 6 F.3d at 947 ("this Court has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible"). As noted above, this Court is confident that, with the proper instructions, the jury will be able to "keep [any] evidence relevant to each defendant separate and render a fair and impartial verdict as to each defendant." *Locascio*, 357 F. Supp. 2d at 543. Severance, therefore, is not warranted in these circumstances. *See United States v. Chang An–Lo*, 851 F.2d 547, 556 (2d Cir. 1988) (despite defendants' claim that the "overwhelming majority of evidence introduced at trial was not admissible against them," a jury instruction was sufficient to ensure that the defendants did not suffer unfair prejudice).

## II. DELLAVALLE'S MOTION FOR A SPEEDY TRIAL

Dellavalle also moves for a "speedy trial." *See* Dkt. 91 at 3. She argues that she "will not be filing any motions in this case and will be requesting an immediate

16

trial date." *Id.* Her request appears to be premised entirely on the fact that she believes there will be "extensive litigation" in this case pertaining to Fox, and it would be "unfair" for her to "remain in custody for several years" while the Government and Fox "litigate various matters." *Id.* But that issue has abated, as Dellavalle was released from custody on February 15, 2023. *See* Dkt. 93.

In any event, although pretrial motions are pending, a trial date is set for February 26, 2024. *See* Dkt. 129. And as discussed above, Fox and Dellavalle are properly joined as defendants. It is "well-settled that § 3161(h)(6) of the Speedy Trial Act provides for one calculation of the 70–day period within which the trial must start that applies to all defendants joined together for trial." *United States v. Mitchell*, No. 10-CR-188-A, 2013 WL 4776342, at *1 (W.D.N.Y. Sept. 4, 2013) (citing *United States v. Pena*, 793 F.2d 486, 489 (2d Cir.1986)). As such, no further relief is appropriate at this juncture. This portion of Dellavalle's motion is also denied.

## CONCLUSION

For the reasons above, Defendants' motions (Dkt. 91, 96) are DENIED.

Dated:   October 20, 2023
         Buffalo, New York

                                    _____
                                    JOHN L. SINATRA, JR.
                                    UNITED STATES DISTRICT JUDGE